IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

```
UNITED STATES OF AMERICA      )
                              )
        v.                    )      CR. NO. 2:08CR57-MEF
                              )
DOUGLAS EUGENE MARTIN         )
```

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully files this response in opposition to the Defendant's Motion to Suppress.  The United States respectfully requests that the Defendant's motion be denied, and as grounds states the following:

### FACTS

On October 12, 2007, Chilton County Sheriff's Office Deputy Ken Harmon conducted a traffic stop on a vehicle driven by John Ritter.  Harmon discovered that the license plate on the vehicle was actually registered to a different vehicle.  Harmon also discovered illegal narcotics in the possession of the driver. After arresting the driver, Harmon searched the vehicle and discovered another license plate in the vehicle.  Harmon determined that this license plate belonged to a truck which had been reported stolen from Hoover, Alabama.

Once back at the Chilton County Sheriff's Office, Ritter was interviewed by Deputies Mike Poe and Shane Lockhart. During this

interview, Ritter admitted that he had stolen a Ford F-350 truck at the request of the defendant, Douglas Eugene Martin.  He stated that Martin had provided directions to him on where to find the vehicle, which was a Ford F-350 truck.  Ritter stated he had taken the vehicle and then driven it to Martin's residence where he left it behind a metal barn behind Martin's house.  Ritter said Martin had paid him with the illegal narcotics found in his possession.

That same day, Chilton County Sheriff's Office deputies sought to corroborate Ritter's story.  The registration of the license plate found in Ritter's vehicle came back to a stolen vehicle from Hoover, Alabama, which was consistent with Ritter's story. Deputies also sought to confirm the location of the truck on Martin's residence.  A deputy was able to view the truck behind the metal barn from a county road beside the barn.  Deputies also drove up a gravel driveway that led behind the barn and found the truck there.  The truck was located in an open field near other vehicles. Deputies viewed the VIN number on the vehicle and it matched the stolen vehicle from the license plate. At that time, deputies secured the vehicle and then sought search warrants for the defendant's residence and his business located next door, Gene Martin's Auto Sales and Body Shop.

At 7:38 pm, on October 12, 2007, Judge Rhonda Hardesty of the Chilton County District Court signed two search warrants.  The first authorized a search of the residence of the defendant located

at 26890 U.S. Highway 31, Jemison, Alabama ("residence"). See Exhibit 1 (Search Warrant and Affidavit). The second authorized a search of the business of the defendant, Gene Martin Auto Sales and Body Shop, located at 27030 U.S. Highway 31, Jemison, Alabama ("business"). See Exhibit 2 (Search Warrant and Affidavit). Both warrants authorized searching the listed properties for evidence of stolen vehicles and of narcotics. The two properties are adjacent to each other on U.S. Highway 31.

While the officers were waiting on the issuance of the warrants, a deputy was posted at the business. While there, an employee of the business, Tony LaDue, asked the deputy if he could retrieve the car he usually drove from the business. When LaDue attempted to leave the business with the car, the deputy examined the VIN number. When he ran the VIN number he found that it belonged to a stolen vehicle.

Law enforcement officers from multiple agencies executed the search warrants at the residence and business beginning on October 13, 2007. During the search of the residence, officers located seven rounds of ammunition in the kitchen. During the search of the business, officers located a box of ammunition in the safe in the defendant's private office and two rounds of ammunition in the desk drawer in the private office. The defendant is a previously convicted felon. The ammunition found in the residence and the business is the basis for Count 2 of the Indictment in this case.

3

The defendant has filed a Motion to Suppress all evidence found during the searches of the defendant's residence and business.

**ANALYSIS**

**1. The search warrants for the defendant's residence and business were supported by probable cause.**

When reviewing whether a search warrant issued by a magistrate or judge is supported by probable cause, the reviewing court is not to consider the issue of probable cause de novo, but is only to determine if there was a "substantial basis" for the determination by the magistrate or judge that probable cause existed. <u>Illinois v. Gates,</u> 462 U.S. 213, 238-39 (1983). The judge issuing the warrant should "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> at 238. The Eleventh Circuit has elaborated on this definition of probable cause and held that an affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." <u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002). "The affidavit must be read in a common sense fashion, and great deference given to the magistrate's finding which should be

4

upheld in marginal or doubtful cases." <u>United States v. Lockett</u>, 674 F.2d 843, 845 (11th Cir. 1982)(citations omitted).

The defendant argues that the affidavits submitted in support of the search warrants did not establish probable cause to believe evidence of a crime was located at either the defendant's home or at his business.[1] The defendant argues that the information in the affidavits is based on an unreliable informant, that the warrant includes information obtained by officers illegally, and that there is not sufficient information in the affidavits to conclude that evidence of criminal activity would be found at either the residence or the business.[2] As the information in the affidavits relates to events that took place the same day as the warrant was signed, the defendant has made no argument that the information in the affidavits is stale.

The defendant correctly notes that the information included in the affidavits is based primarily on statements of a witness, John Ritter. When evaluating a search warrant based on information provided by an informant, the Court must consider the totality of the circumstances surrounding the information and the informant, and not a set formula or test. <u>Illinois v. Gates</u>, 213 U.S. at 238.

---

[1]Although separate warrants were submitted in support of the applications to search the residence and the business, the factual portions of the affidavits are identical.

[2]Notably, the defendant only challenges the basis for the searches and does not argue that the execution of the search warrants was improper or exceeded the scope of the warrants.

In this case, it should first be noted that the information was not provided by an anonymous source or confidential informant. The information was provided by a named witness who the affidavit revealed had been interviewed by law enforcement. A face to face interview with the source adds to veracity. See United States v. Heard, 367 F.3d 1275, 1279 (11th Cir. 2004) ("A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant.")

The affidavit recited that Ritter had been found in possession of drugs and a license plate from a stolen vehicle. That he was facing potential charges and was providing information adds to his credibility because the information he provided about stealing the vehicle was detailed enough that law enforcement could disprove it if he was lying, which would make his situation even worse. See United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995)("As her report consisted of facts readily verifiable upon a subsequent search by the police ...the CI was unlikely to be untruthful, for, if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly."); see also United States v. McClure, 160 Fed.Appx. 842, 845 (11th Cir. 2005).

Also important to assessing the veracity of Ritter's

6

information is that the affidavit included corroboration of his information. Ritter stated that he had stolen a vehicle at the behest of the defendant in exchange for drugs. Ritter was found in possession of a license plate in his truck which was registered to a vehicle reported stolen in Hoover, Alabama, and in possession of illegal drugs. Officers verified that a vehicle matching the description of the stolen vehicle was found on the defendant's property. These facts provide independent corroboration of Ritter's information.

The defendant claims that the corroboration provided by the officers who located a vehicle matching the description of the stolen vehicle on the defendant's property should not be considered because officers entered onto the property without a warrant in order to locate that vehicle. If officers illegally ascertained the location of that vehicle, then the defendant is correct that it could not be used to support a finding of probable cause. However, officers did not violate the defendant's Fourth Amendment rights in the manner in which they located the vehicle on the defendant's property because the vehicle was not located within the curtilage of the defendant's residence and thus there was no reasonable expectation of privacy in the area where the vehicle was located pursuant to the open fields doctrine. See Oliver v. United States, 466 U.S. 170, 177 (1984) ("We conclude ... that the government's intrusion upon the open fields is not one of those 'unreasonable

searches' proscribed by the text of the Fourth Amendment.").

The affidavit states that Ritter stole a Ford F-350 truck. Chilton County Sheriff's Office deputies located a Ford F-350 truck parked in an open field behind a metal barn at 26890 U.S. Highway 31, which is the address of the defendant's home. This was also the location where Ritter told the authorities he had left the vehicle.

The defendant argues that the actions of the officers in locating this truck were illegal because they trespassed on the property of the defendant in order to find it. However, the question for the court is not whether officers trespassed on the defendant's property. The common law of trespass and the protections afforded by the Fourth Amendment are different. The law of trespass may protect portions of property that the Fourth Amendment does not. See Oliver, 466 U.S. at 183-84; United States v. Hall, 47 F.3d 1091, 1095-96 (11th Cir. 1995); see also United States v. Williams, 581 F.2d 451, 454 (5th Cir. 1978)(finding that officers' "furtive trespass, though carried to the very verge of propriety, does not render the search warrant invalid."). The question for the Court is whether the vehicle located by the police was located outside of the curtilage of the home where the Fourth Amendment does not apply. See United States v. Hatch, 931 F.2d 1478, 1480 (11th Cir. 1991).

The curtilage of a home is the area outside around a house

which "harbors the 'intimate activity associated with the "sanctity of a man's home and the privacies of life."' United States v. Dunn, 480 U.S. 294, 300 (1987)(citations omitted).  The Supreme Court further held that in determining whether an area is within the curtilage, courts should consider four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301.

In this case, the stolen Ford F-350 truck was found in a field behind a metal barn located behind the defendant's house.  Between the barn and house was a fenced in pool.  Considering the four factors, first, the area behind the barn was not in close proximity to the house.  A driveway, pool, patio, parking area, and the metal barn were all between the area with the vehicle and the house. This location is not so close as to mandate inclusion within the curtilage, especially when areas as close as a sideyard that abuts the house may not even be curtilage. See United States v. Cousins, 455 F.3d 1116, 1124 (10th Cir. 2006)(finding that side yard that was next to house was not part of the curtilage).

Second, the area is not within an enclosure such as a fence or hedgerow that included the house. The pool was enclosed by a fence, but the metal barn was not, and neither was the field behind the

barn.

Third, the area behind the barn was not put to any apparent use associated with the intimate activity of the home.  The field was an area where cars were parked, which is not an activity commonly associated with the sanctity of a man's home. The pool and patio were both on the other side of the barn next to the house. Access to the field was provided by two unobstructed gravel driveways.  One was accessible from U.S. Highway 31 and the other from Chilton County Road 138.  Neither gravel driveway led to the house or to the attached garage.

Finally, the area where the truck was located was visible from a public road.  Although the house is located on U.S. Highway 31, Chilton County Road 138 runs beside the property, perpendicular to U.S. Highway 31.  The area behind the barn was visible from the county road and the vehicle was seen by an officer from that road.[3] The driveways leading to the field were not obstructed. When areas such as driveways or parking areas are visible from the road they are unlikely to be considered part of the curtilage. See United States v. Brown, 510 F.3d 57, 65 (1st Cir. 2007)(holding that part of driveway right next to garage was not part of curtilage and

---

[3]The vehicle matching the description of the stolen vehicle was in plain view from the public county road.  Even if the officers had not actually entered onto property owned by the defendant, they were still able to confirm the existence of the vehicle matching the description, just not with the specificity of checking a VIN number.

noting that "[i]f the relevant part of the driveway is freely exposed to public view, it does not fall within the curtilage.") Based on these four factors, the area behind the metal barn on the defendant's property was not a part of the curtilage and thus officers did not violate the Fourth Amendment when they observed the Ford F-350 truck there and examined its VIN number.

The defendant also argues that the search warrant affidavits did not provide a sufficient nexus between the crimes alleged and the locations to be searched. "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990)(quoting United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982).

The search warrant for the defendant's residence provides a link between the residence and the offense, in that the affidavit states that a vehicle matching the description of the stolen vehicle registered to the license plate in Ritter's truck was found on the defendant's property.  The property referred to is the defendant's residence.  Even though only the stolen vehicle was found on the property, it is a reasonable inference for the court to conclude that other evidence related to that stolen vehicle would be located at the same location as the vehicle.

The search warrant authorizing the search of the defendant's

business also provides sufficient circumstantial evidence for the judge to have concluded that the listed evidence would likely be found at the business.  The affidavit alleged that John Ritter had stolen a vehicle on behalf of the defendant and described Ritter in possession of two license plates registered to other vehicles.  The affidavit requested permission to search the business of the defendant, Gene Martin Auto Sales and Body Shop, which is located right next to the residence where the stolen vehicle was located. The affidavit listed no direct ties between the stolen vehicle, Ritter, and the business, but it was reasonable for the judge to infer that evidence of stolen vehicles would be located at an auto sales and body shop business operated by the defendant located next door.

As the Third Circuit Court of Appeals has noted, "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" United States v. Jones, 994 F.2d 1051, 1056 (3rd Cir. 1993)(citations omitted).  It is a natural inference that a criminal engaged in auto theft such as the defendant would attempt to hide evidence of his auto theft

at the car dealership and body shop he operated or that evidence associated with auto theft such as parts, VIN plates, title paperwork, and license plates would be found at a car dealership and body shop run by the suspect. See United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990)("Evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.")(citations omitted)

The affidavits, although perhaps not written in the most precise or exacting manner as they would have been if drafted by attorneys, provide sufficient probable cause to support the search warrants, which were signed after being evaluated by a neutral magistrate in the light of common sense. See Illinois v. Gates, 462 U.S. at 235 (recognizing that "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'").

In this case, there was a "substantial basis" supporting the judge's decision that probable cause existed to support the search warrants in this case. The affidavits alleged facts which created a fair probability that evidence of stolen vehicles and drug distribution would be found at the defendant's residence and business. This fair probability was based on the statements of John Ritter, a named witness, regarding his personal actions with the defendant, which were corroborated by the independent actions of law enforcement. Ritter related that he had stolen a vehicle at

the personal request of the defendant in exchange for illegal drugs. Ritter was found in possession of a license plate that was registered to a stolen vehicle, had a license plate on his car from a different car, and was found in possession of illegal drugs. Officers then located the stolen vehicle on the defendant's property. The location of the stolen vehicle, the nature of the offenses, and the nature and location of the defendant's business provided a reasonable basis, when considered in the light of common sense and the totality of the circumstances, for a judge to infer that evidence of stolen vehicles and drug distribution would be found at the defendant's residence and business.

**2. Even if the search warrants were not supported by probable cause, officers acted in good faith reliance on the warrants pursuant to <u>United States v. Leon</u>.**

Even if the affidavits did not provide probable cause, the evidence seized at the defendant's residence and business should not be excluded because the officers acted in objectively reasonable good faith reliance on the warrants pursuant to <u>United States v. Leon</u>, 468 U.S. 897 (1984). In <u>Leon</u>, the Supreme Court held that when an officer relies in good faith on a warrant issued by a magistrate, evidence seized when executing that warrant will not be excluded, even if the warrant was not supported by probable cause. <u>Id.</u>

<u>Leon</u> also set out four exceptions when an officer would not be

14

entitled to rely on a warrant issued by a magistrate: 1.) when the magistrate was misled by information in the affidavit the affiant knew to be false or the affiant recklessly disregarded the truth; 2.) when the issuing magistrate wholly abandons his judicial role; 3.) when the affidavit is so "lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable."; and 4.) when the warrant is so facially deficient that executing officers cannot reasonably rely upon it. Id. at 923. In these circumstance, it would not be reasonable for any officer to rely on the warrant.

The defendant's motion does not address whether any of the Leon good faith exceptions apply. The defendant makes no allegations that the affiant provided false information; that the magistrate abandoned her judicial role; or that the warrant was facially defective. The crux of the defendant's argument is that the affidavits failed to provide probable cause. The United State therefore assumes the defendant's position would be that the affidavits are so lacking in indicia of probable cause that no reasonable officer could rely upon the warrants based on them.

The affidavits have sufficient indicia of probable cause such that a reasonable officer could rely upon the warrants. The Court must first consider whether there was an indicia of probable cause, based on the four corners of the affidavit. United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003). The affidavits

15

include specific information from a named witness who stated that the defendant provided him with narcotics in exchange for stealing a truck.    The affidavit described how that information was corroborated by the presence of narcotics and a license plate from a stolen vehicle in the witness's own vehicle; and that a truck matching the description of the stolen vehicle was found on the defendant's property.    The location of the stolen vehicle and nature of the business to be searched provide an indicia of probable cause as to the link between the offenses and the locations.    A case in which there would be no indicia of probable cause would be one in which the affidavit was a bare bones recitation of conclusory allegations with no corroboration or logical inferences. See United States v. Martin, 297 F.3d at 1313-14.

For example, in United States v. Snipes, 444 F.Supp.2d 1203 (MDAL 2006), the Court found that the affidavit failed to provide an indicia of probable cause because it consisted only of a statement that an unnamed person told the detective that the defendant had bought stolen property and that the detective had observed an unusual amount of traffic at the residence. Id. at 1208.    In contrast, in this case, the affidavit included information from a named source and specific corroboration of the information provided by the source.

Finally, when considering whether reliance on the search

16

warrants was objectively reasonable, the Court may consider information known to the officers but not included in the affidavit. See United States v Martin, 297 F.3d at 1318. Officers executing the search warrants knew, in addition to the information in the affidavits, that another stolen vehicle was identified leaving the premises of the defendant's business being driven by Anthony LaDue, an employee of the business. Officers also knew that Ritter had told them that he had personally left the stolen vehicle behind the metal barn at the defendant's residence, and that the location of the truck matched the information Ritter provided. Although not clear in the affidavit, officers were also aware that the VIN number of the vehicle described by Ritter and found at the defendant's residence matched the VIN number of the stolen vehicle registered to the license plate found in Ritter's truck. This information provided direct links between the defendant's business and residence and stolen vehicles. Considering the totality of the circumstances, including this information, reliance on the search warrants was not objectively unreasonable.

Leon exists because there is no deterrent effect to police misconduct by excluding evidence obtained pursuant to search warrants signed by magistrates under a mistaken belief that probable cause exists. As the Supreme Court held in Leon, "Penalizing the officer for the magistrate's error, rather than his

own, cannot logically contribute to the deterrence of the Fourth Amendment." United States v. Leon, 468 U.S. at 921.

In this case, if there was error in signing the search warrants, the error belonged to the judge, and not to the officers who executed the search warrant. The Supreme Court has stated, "Suppression of evidence has always been our last resort, not our first impulse." Hudson v. Michigan, 547 U.S. 586, 591 (2006). In a case where officers obtained search warrants and followed orders issued by a judge, suppression should remain a last resort that is not exercised. Therefore, even if probable cause did not support the search warrants, the officers acted in reasonable reliance on the warrants and the evidence should not be suppressed.

**WHEREFORE,** the United States requests that the defendant's Motion to Suppress be denied.

Respectfully submitted this the 11th day of June, 2008.

<div style="margin-left:40%">

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/Matthew W. Shepherd
MATTHEW W. SHEPHERD
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
FAX: (334) 223-7135
matthew.shepherd@usdoj.gov

</div>

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
            v.              )    CR. NO. 2:08-cr-57-MEF
                            )
DOUGLAS EUGENE MARTIN       )

CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send a copy to David Luker, attorney for the defendant.


                    Respectfully submitted,

                    LEURA G. CANARY
                    UNITED STATES ATTORNEY

                    /s/Matthew W. Shepherd
                    MATTHEW W. SHEPHERD
                    131 Clayton Street
                    Montgomery, Alabama 36104
                    Phone: (334) 223-7280
                    FAX: (334) 223-7135
                    matthew.shepherd@usdoj.gov

# SEARCH WARRANT

**STATE OF ALABAMA** )

)

**COUNTY OF CHILTON** )

## TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY:

THE ATTACHED AFFIDAVIT having been sworn to by DEPUTY KEN HARMON, before me this day, based upon facts stated therein, probable cause having been found, in the name of the People of the State of Alabama, I command that you enter the following described place: the residence of Gene Martin located at 26890 Highway 31 North Jemison, Alabama 35085.

Directions are as follows: Leaving the Chilton County Courthouse, take a right on to 2nd Ave, then an immediate right onto Highway 31 North traveling approximately 12 to 15 miles to the city of Jemison. Mr. Martin's residence will be a two story brick residence with a gray tile roof located on the right side. The residence is the first residence on the right after passing the intersection of Highway 31 and Highway 155 to search the residence and/or any and all out buildings contained within the curtilage, and vehicles located within the curtilage; to search for, seize, secure, tabulate and make return according to law the following property and things: Evidence relating to the crimes of theft of property (motor vehicle) including but not limited to car tags, car titles, vin plates and car parts from stolen vehicles and any items which could be used manufacture these items and illegal possession of controlled substance and the manufacture of controlled substance and any containers which could hold the aforesaid items, and make due return of this warrant and an inventory of all property seized thereunder before me within 10 days as required by law.

ISSUED TO DEPUTY KEN HARMON, UNDER MY HAND AT _7:38_ O'clock _P_.M., this 12TH DAY OF OCTOBER, 2007.

_Rhonda J. Hardey_
Rhonda J. Hardey
District Judge
19th Judicial Circuit
Chilton County



**GOVERNMENT EXHIBIT**

CASE NO.

EXHIBIT NO. **1**

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF ALABAMA        )
                        )
COUNTY OF CHILTON       )

Before me, Rhonda J. Hardesty, District Court Judge of Chilton County Alabama, the undersigned duly sworn, deposed and states:

"My name is Ken Harmon. I am a Deputy with the Chilton County Sheriff's Department, State of Alabama and have been so employed for the past approximately 4 years. I have been in law enforcement for the past 7 years wherein my duties included a myriad of cases, including various violent crimes, theft, drug related cases and traffic cases."

Affiant further states that he has reason to believe, probable cause to believe, and a clear indication to believe, that evidence of theft of property (motor vehicle) including car tags, car titles, vin plates and/or illegal possession of controlled substance and any and all items which may be used to manufacture any of the above listed items will be discovered at the residence and/or out buildings within the curtilage of the residence of, Gene Martin located at 26890 Highway 31 North Jemison, Alabama 35085 including but not limited to: stolen property such as vehicles, car tags, car titles vin plates, car parts from stolen vehicles and illegal drugs. Directions are as follows: Leaving the Chilton County Courthouse, take a right on to 2nd Ave, then an immediate right onto Highway 31 North traveling approximately 12 to 15 miles to the city of Jemison. Mr. Martin's residence will be a two story brick residence with a gray tile/shingle roof located on the right side. The residence is the first residence on the right after passing the intersection of Highway 31 and Highway 155.

The facts tending to establish the foregoing grounds for the issuance of search warrant are as follows: On the afternoon of October 12, 2007, Deputy Ken Harmon with the Chilton County Sheriff's Department initiated a traffic stop for speeding on a red Chevrolet S-10 pick-up truck. After running the driver's information through communications, Deputy Harmon discovered that the vehicle had a switched tag. The driver of the vehicle was also in possession of controlled substance (lortab and methamphetamine). Deputy Harmon arrested the driver for unlawful possession of controlled substance. The driver of the vehicle was identified as John Ritter. Upon inventory of the vehicle, Deputy Harmon discovered another Alabama car tag which law enforcement confirmed to belong to a stolen vehicle out of Hoover. Law enforcement located a vehicle matching the description of the vehicle stolen from Hoover on the property of Gene Martin.

Mr. Ritter was taken to the Chilton County Jail where he requested to speak to someone with the Sheriff's

1

Department. Investigator's Mike Poe and Shane Lockhart mirandized Mr. Ritter. During his statement, Mr. Ritter he had stolen one Ford F-350 truck at the request of Gene Martin. Mr. Martin told Mr. Ritter the description of the vehicle, directions to where it would be located, and best time to retrieve the vehicle. As payment for stealing this vehicle, Martin gave Ritter the methamphetamine and lortab.

Mr. Ritter had previously taken stolen items such as cameras to Mr. Martin and been paid by receiving illegal drugs.

.Based on the foregoing, I have probable cause to believe and do believe that Gene Martin has engaged in illegal activities involving various stolen vehicles, car tags, car titles, vin plates, car parts from stolen vehicles and illegal drugs and/or controlled substances and any and all items used to manufacture any of the previously mentioned items. Based upon my training and experience I know that residences can be used as hideouts and/or staging areas. Therefore it is in my opinion that evidence of these crimes will be discovered on or about Gene Martin's residence and/or out buildings contained within the curtilage. I herein request authorization to search for and seize all evidence relating to the crimes of theft of property and possession of controlled and/or illegal substances, and any documents and evidence relating to criminal activity, specifically drug activity and theft of motor vehicles and any containers which could hold the aforesaid items any containers which could hold the aforesaid items related to the commission of this offense will be located at, at 26890 Highway 31 North Jemison, Alabama 35085 either in the residence, out buildings contained within the curtilage or within vehicles within the curtilage."

Ken Harmon
Deputy, Chilton County Sheriff's Department

Sworn and Subscribed before me this 12 day of _October_____, 2007.

Rhonda J. Hardesty
District Judge
19th Judicial Circuit
Chilton County

2

# SEARCH WARRANT

STATE OF ALABAMA        )
            )
COUNTY OF CHILTON       )

## TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY:

  THE ATTACHED AFFIDAVIT having been sworn to by DEPUTY KEN HARMON, before me this day, based upon facts stated therein, probable cause having been found, in the name of the People of the State of Alabama, I command that you enter the following described place: the business of Gene Martin Auto Sales and Body Shop located at 27030 Highway 31 North Jemison, Alabama 35085.

  Directions are as follows: Leaving the Chilton County Courthouse, take a right on to 2nd Ave, then an immediate right onto Highway 31 North traveling approximately 12 to 15 miles to the city of Jemison. Martin's business is located on the right directly across the street from the intersection of Highway 155 and Highway 31 to search the business, residence and/or any and all out buildings contained within the curtilage, and vehicles located within the curtilage; to search for, seize, secure, tabulate and make return according to law the following property and things: Evidence relating to the crimes of theft of property (motor vehicle) including but not limited to car tags, car titles, vin plates and car parts from stolen vehicles and any items which could be used manufacture these items and illegal possession of controlled substance and the manufacture of controlled substance and any containers which could hold the aforesaid items, and make due return of this warrant and an inventory of all property seized thereunder before me within l0 days as required by law.

  ISSUED TO DEPUTY KEN HARMON, UNDER MY HAND AT _7:38_ O'clock _p_ .M., this 12TH DAY OF OCTOBER, 2007.

              _Rhonda J. Hardesty_
              Rhonda J. Hardesty
              District Judge
              19th Judicial Circuit
              Chilton County



GOVERNMENT EXHIBIT

CASE NO.

EXHIBIT NO. 2

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF ALABAMA    )
                         )
COUNTY OF CHILTON    )

Before me, Rhonda J. Hardesty, District Court Judge of Chilton County Alabama, the undersigned duly sworn, deposed and states:

"My name is Ken Harmon. I am a Deputy with the Chilton County Sheriff's Department, State of Alabama and have been so employed for the past approximately 4 years. I have been in law enforcement for the past 7 years wherein my duties included a myriad of cases, including various violent crimes, theft, drug related cases and traffic cases."

Affiant further states that he has reason to believe, probable cause to believe, and a clear indication to believe, that evidence of theft of property (motor vehicle) including car tags, car titles, vin plates and/or illegal possession of controlled substance and any and all items which may be used to manufacture any of the above listed items will be discovered at the residence and/or out buildings within the curtilage of the residence of, Gene Martin Auto Sales and Body Shop located at 27030 Highway 31 North Jemison, Alabama 35085 including but not limited to: stolen property such as vehicles, car tags, car titles vin plates, car parts from stolen vehicles and illegal drugs. Directions are as follows: Leaving the Chilton County Courthouse, take a right on to 2nd Ave, then an immediate right onto Highway 31 North traveling approximately 12 to 15 miles to the city of Jemison. Martin's business is located on the right directly across the street from the intersection of Highway 155 and Highway 31.

The facts tending to establish the foregoing grounds for the issuance of search warrant are as follows: On the afternoon of October 12, 2007, Deputy Ken Harmon with the Chilton County Sheriff's Department initiated a traffic stop for speeding on a red Chevrolet S-10 pick-up truck. After running the driver's information through communications, Deputy Harmon discovered that the vehicle had a switched tag. The driver of the vehicle was also in possession of controlled substance (lortab and methamphetamine). Deputy Harmon arrested the driver for unlawful possession of controlled substance. The driver of the vehicle was identified as John Ritter. Upon inventory of the vehicle, Deputy Harmon discovered another Alabama car tag which law enforcement confirmed to belong to a stolen vehicle out of Hoover. Law enforcement located a vehicle matching the description of the vehicle stolen from Hoover on the property of Gene Martin.

Mr. Ritter was taken to the Chilton County Jail where he requested to speak to someone with the Sheriff's Department. Investigator's Mike Poe and Shane Lockhart mirandized Mr. Ritter. During his statement,

1

Mr. Ritter he had stolen one Ford F-350 truck at the request of Gene Martin. Mr. Martin told Mr. Ritter the description of the vehicle, directions to where it would be located, and best time to retrieve the vehicle. As payment for stealing this vehicle, Martin gave Ritter the methamphetamine and lortab.

Mr. Ritter had previously taken stolen items such as cameras to Mr. Martin and been paid by receiving illegal drugs.

.Based on the foregoing, I have probable cause to believe and do believe that Gene Martin has engaged in illegal activities involving various stolen vehicles, car tags, car titles, vin plates, car parts from stolen vehicles and illegal drugs and/or controlled substances and any and all items used to manufacture any of the previously mentioned items. Based upon my training and experience I know that residences can be used as hideouts and/or staging areas. Therefore it is in my opinion that evidence of these crimes will be discovered on or about Gene Martin's residence and/or out buildings contained within the curtilage. I herein request authorization to search for and seize all evidence relating to the crimes of theft of property and possession of controlled and/or illegal substances, and any documents and evidence relating to criminal activity, specifically drug activity and theft of motor vehicles and any containers which could hold the aforesaid items any containers which could hold the aforesaid items related to the commission of this offense will be located at, at 27030 Highway 31 North Jemison, Alabama 35085 either in the business, residence, out buildings contained within the curtilage or within vehicles within the curtilage."

Ken Harmon
Deputy, Chilton County Sheriff's Department

Sworn and Subscribed before me this _12_ day of ___October___, 2007.

_7:38 pm_

Rhonda J. Hardesty
District Judge
19th Judicial Circuit
Chilton County

2